**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 14, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

PREDATOR INTERNATIONAL, INC., a
Colorado corporation,

     Plaintiff,

v.

GAMO OUTDOOR USA, INC., a Florida
corporation,

     Defendant.

_____

JOHN M. COGSWELL,

     Attorney – Appellant.

No. 14-1354

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:09-CV-00970-PAB-KMT)**
_____

Submitted on the briefs:

John M. Cogswell, Cogswell Law Offices, P.C., Buena Vista, Colorado, for Attorney –
Appellant.
_____

Before **HARTZ**, **GORSUCH**, and **MORITZ**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

Attorney John Cogswell appeals the imposition of a Rule 11 sanction. Acting on behalf of Predator International, Inc., Cogswell filed a lawsuit in April 2009 in the United States District Court for the District of Colorado against Gamo Outdoor USA, Inc. and Industrias El Gamo, S.A. (collectively, Gamo). The original complaint alleged patent infringement and other claims. When it appeared that Lee Phillips, a coinventor of the patent at issue, was asserting that he still owned half the patent, Cogswell moved to dismiss the infringement claim, explaining that Predator would litigate ownership in state court with the expectation of reviving the patent-infringement claim once it had established its ownership. The state litigation expanded after Gamo purchased Phillips's interest in the patent. Cogswell then moved in federal court to supplement Predator's complaint with a challenge to Gamo's claimed interest in the patent and moved to amend the complaint by reviving the patent-infringement claim. The district court denied the motion.

Eventually the district court imposed a Rule 11 sanction on Cogswell for filing the motion to supplement and amend Predator's complaint. It justified the sanction on the grounds that he was forum shopping on the claims he wished to add, his motion came too long after he had learned of Gamo's purchase of Phillips's interest in the patent, and nothing had changed to justify his reinstating the patent-infringement claim. Cogswell appeals the sanction. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse. The motion to supplement and amend was not unwarranted under existing law.

We address our jurisdiction, the requirements for a Rule 11 sanction, and the application of these requirements to this case.

## I.    DISCUSSION

### A.    Jurisdiction

Because this case involves a patent, our jurisdiction could be questioned.  For actions filed before September 16, 2011, the United States Court of Appeals for the Federal Circuit had exclusive jurisdiction over appeals from district-court decisions if the lower court's jurisdiction rested in whole or in part on 28 U.S.C. § 1338(a), which gives district courts jurisdiction over civil actions arising under patent legislation.  *See* 28 U.S.C. § 1295(a)(1) (2006).[1]  Section 1295(a)(1) might seem to deprive this court of jurisdiction because a claim for patent infringement was included in Predator's original complaint, as well as in Predator's first, second, and third amended complaints, filed between May 2009 and March 2010.  But at the time of Cogswell's notice of appeal, the most recent complaint was Predator's fourth amended complaint, filed in September 2010, which did not contain a patent-infringement claim.  And it is that complaint which governs our jurisdiction.

---

[1] As a result of the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, § 19(b), 125 Stat. 284, 331–32 (2011), the Federal Circuit's jurisdiction has been changed.  But the AIA applies only to civil actions commenced on or after September 16, 2011.  *See* AIA § 19(e), 125 Stat. at 333; *Wawrzynski v. H.J. Heinz Co.*, 728 F.3d 1374, 1378 (Fed. Cir. 2013).

This conclusion follows from two propositions.  First, an amended pleading "supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."  *Gilles v. United States*, 906 F.2d 1386, 1389 (10th Cir. 1990) (en banc); *see Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) ("an amended complaint super[s]edes an original complaint and renders the original complaint without legal effect" (internal quotation marks omitted)).  Second, a court's subject-matter jurisdiction ordinarily is determined by the situation at the time that jurisdiction is invoked.  This is true of federal district courts.  *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) ("the jurisdiction of the court depends upon the state of things at the time of the action brought") (internal quotation marks omitted)); *cf. id.* at 572 (noting exception to time-of-filing rule when lack of diversity jurisdiction is cured by dismissal of a party); 16 James Wm. Moore et al., Moore's Federal Practice § 107.41[2][c] (3d. ed. 2011) ("Removability is ordinarily determined as of the date the notice of removal is filed.").  And it is also true of a federal appellate court, whose jurisdiction is invoked by a notice of appeal.  Thus, the Federal Circuit has held that it lacked jurisdiction over an appeal because the patent claim originally brought in the district court had been voluntarily dismissed without prejudice before entry of final judgment and filing of the notice of appeal.  *See Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987); *see also Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 835 (2002) (Stevens, J., concurring in part and in the judgment) ("[I]f the only patent count in a multicount complaint was voluntarily

4

dismissed in advance of trial, it would seem . . . clear that the appeal should be taken to the appropriate regional court of appeals rather than to the Federal Circuit."); *id.* at 840 (Ginsburg, J., concurring in the judgment) (Because "no patent claim was actually adjudicated" in district court, Federal Circuit lacked appellate jurisdiction.).

Here the notice of appeal was filed after the fourth amended complaint was filed. Later events—such as dismissal of a federal claim or mootness—can affect a court's jurisdiction. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); *Winsness v. Yocom*, 433 F.3d 727, 736 (10th Cir. 2006) ("Even if we assume that a credible threat of prosecution existed before this lawsuit was filed, the prosecutors' [post-complaint] affidavits [disavowing an intention to prosecute] have rendered the controversy moot."). But no such events after the notice of appeal have been presented to us.[2]  We have jurisdiction under 28 U.S.C. § 1291 and can proceed to the merits.

---

[2] We note that in response to Predator's fourth amended complaint, Gamo pleaded a counterclaim requesting a declaratory judgment that it had not infringed Predator's patent, and that pleading was operative at the time of the notice of appeal.  Such a counterclaim might now be sufficient to confer exclusive jurisdiction on the Federal Circuit because under the AIA that exclusive jurisdiction now includes "an appeal from a final decision of a district court . . . in any civil action arising under, *or in any civil action in which a party has asserted a compulsory counterclaim arising under*, any Act of Congress relating to patents . . . ."  28 U.S.C. § 1295(a)(1) (2012) (emphasis added); *see* AIA, § 19(b), 125 Stat. at 331–32.  But before the AIA, the Federal Circuit's jurisdiction depended on a claim "arising under" patent legislation.  And "a counterclaim . . . cannot

Continued . . .

### B.    The Rule 11 Standard

Federal Rule of Civil Procedure 11 warns attorneys that by "presenting to the

court a pleading, written motion, or other paper," they certify to the best of their

"knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances," that the paper meets the following conditions:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  In short, Rule 11 requires that a "pleading be, to the best of the

signer's knowledge, well grounded in fact, warranted by existing law or a good faith

argument for the extension, modification, or reversal of existing law, and . . . not

interposed for any improper purpose."  *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104

(10th Cir. 1993).  "If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an appropriate

---

serve as the basis for 'arising under' jurisdiction."  *Vornado*, 535 U.S. at 831.  Gamo's
patent-related counterclaim does not defeat our jurisdiction.

sanction," meaning one "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(1), (4).

The district court imposed a Rule 11 sanction against Cogswell, Predator's attorney, for filing a motion to supplement its complaint with a challenge to Gamo's claimed interest in the patent and to amend its complaint by reviving the patent-infringement claim. Because the court found "no evidence that Predator acted with malice or bad faith," *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2014 WL 201662, at *8 (D. Colo. Jan. 17, 2014), the question before us is whether the motion to supplement and amend the complaint was unwarranted under the facts or law. To answer that question, the district court must evaluate Cogswell's conduct under a standard of "objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable. Even if a legal position in a pleading is clearly contrary to current law, it is not sanctionable if the position is warranted "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). This standard can be compared to the lesser standard for sanctions under Rule 37(a)(5)(A) (for improperly opposing discovery disclosure), which ordinarily must be imposed to compensate the opposing party for its expenses unless the objection to disclosure "was substantially

justified." And even if counsel obnoxiously tries a court's patience with unfounded or silly arguments, the sanction must be based solely on *those* violations of Rule 11, not on other rejected arguments that were in fact objectively warranted.

On appeal we "apply an abuse-of-discretion standard in reviewing all aspects of a district court's Rule 11 determination. A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). To evaluate the district court's imposition of the sanction against Cogswell, we set forth the chronology of relevant events, noting the applicable law as appropriate.

### C.    Application to This Case

In January 2000, air-gun enthusiasts Tom May and Lee Phillips filed a provisional patent application for a new type of air-gun pellet they had invented. A few months later, Predator was formed to manufacture, promote, and sell the new pellet, with May as President and Phillips as Vice President and Secretary. But Phillips was involved in an automobile accident that led to a lengthy prison term, and he resigned from Predator in early 2002, selling May "all of [his] capital stock and rights and interests in Predator International, Inc." Aplt. App. at 78. The patent application was granted in 2003. On January 1, 2007, the current owners of Predator bought May's interest in the company.

About two years later, Predator discovered that Gamo was marketing an air-gun pellet substantially identical to its own pellet, using virtually the same trade dress, slogan, and advertising copy, which had allegedly caused customer confusion and damaged

Predator's reputation.  May assigned his interest in the patent to Predator, and in April

2009, Cogswell filed on behalf of Predator a federal complaint against Gamo asserting

claims for trade-dress infringement, slogan infringement, copyright infringement,

violation of Colorado's Consumer Protection Act, unjust enrichment, unfair competition,

and patent infringement.

     In February 2010 Predator attempted to obtain from Phillips a written assignment

of his patent-ownership rights.  Phillips refused and claimed a 50% ownership interest in

the patent.  His claim of ownership presented a problem for Predator's patent-

infringement claim because a co-owner of a patent does not have standing to sue for

infringement unless all other co-owners join the suit.  *See Israel Bio-Eng'g Project v.*

*Amgen, Inc.*, 475 F.3d 1256, 1264–65 (Fed. Cir. 2007).  The problem did not, however,

require dismissal of Predator's patent-infringement claim.  *See Kunkel v. Topmaster Int'l,*

*Inc.*, 906 F.2d 693, 695 (Fed. Cir. 1990) ("merely because a question of contract law

must be decided prior to reaching the infringement question does not defeat federal

subject matter jurisdiction" (internal quotation marks omitted)).  Although the

infringement claim could not be decided before the ownership issue was resolved, the

federal court could assume supplemental jurisdiction over the patent-ownership claim,

*see* 28 U.S.C. § 1367(a) (district courts have supplemental jurisdiction "over all other

claims that are so related to claims in the action within [the court's] original jurisdiction

that they form part of the same case or controversy"); *Energy Recovery, Inc. v. Hauge*,

133 F. Supp. 2d 814, 820 (E.D. Va. 2000) ("precisely because patent ownership

9

represents a necessary predicate issue, it is sufficiently related to Plaintiff's patent non-infringement claim to afford Plaintiff a basis for supplemental jurisdiction"); *cf. Kunkel*, 906 F.2d at 697 n.1 (under former version of 28 U.S.C. § 1367, district court in patent case would have pendent jurisdiction over claim of breach of patent-license contract).  Or the infringement proceedings could be stayed while ownership was litigated in state court.  *See Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 215–18 (E.D.N.Y. 1994) (supplemental jurisdiction exercised over patent-ownership claims in patent-infringement suit, but case stayed pending outcome in state court).

But Predator took another course.  On March 4, 2010, it moved to dismiss without prejudice its patent-infringement claim, stating its intent to prove its exclusive ownership in state court and then refile the claim in the federal lawsuit.  Its motion to dismiss explained:

> Predator vehemently disagrees that Mr. Phillips has any [patent] rights  . . . and that he is, in fact, obligated to provide Predator with a written assignment evidencing that ownership.  Nonetheless, in recognition of the fact that standing is a threshold issue in every action, Predator recognizes that it must resolve this ownership dispute with Mr. Phillips, obtain a formal patent assignment from him, or re-file with Mr. Phillips as a co-plaintiff, to cure the potential defect in standing.  Rather than bring Mr. Phillips into this case and plead ancillary state law claims regarding ownership, resulting in a time-consuming and complicated sideshow over only one of multiple claims made in this case, Predator plans to proceed with litigation in Colorado state court against Mr. Phillips.  *Predator certainly hopes that this ownership dispute can be resolved swiftly so that it may re-file its patent infringement claim as soon as possible*.

*Predator*, 2014 WL 201662, at *1 (internal quotation marks omitted) (emphasis added).

In May, while its motion to dismiss was still pending, Predator moved to file a fourth amended complaint excluding the patent-infringement claim.  On September 9 the federal district court granted the motion, and it later denied as moot Predator's motion to dismiss its infringement claim.

The May motion to amend stated that "Predator seeks to voluntarily dismiss its patent infringement claims . . . because it has discovered that *it cannot prove that it had standing* to pursue these claims without a written assignment from Mr. Lee Phillips."  *Id.* at *2 (emphasis added) (internal quotation marks omitted).  Both Gamo and the district court interpreted this statement as a concession that Predator lacked standing to bring the claim.  *See id.* at *4, *5.  But Predator has always insisted that it owned the patent.  It was simply acknowledging that its ownership of the patent had to be litigated and expressing its view that the best forum for that litigation would be the state court.  That is quite different from an admission that it lacked standing.  Indeed, at the outset of a case it is enough to *allege* the facts (here, ownership of the patent) establishing standing.  If the allegations are, as here, challenged, then the facts have to be litigated; but they can be litigated in the forum where jurisdiction is at issue.  The Supreme Court has taught: "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  General allegations suffice at the pleading stage, although affidavits may be necessary on a summary-judgment motion and ultimately a trial may be

11

necessary to resolve the issue.  *See id.*  Predator acknowledged that a trial would be

necessary but wanted that trial to be in state court.  As Predator later stated in its response

to Gamo's motion for sanctions:

> Predator has never conceded that it did not have standing.  It has only
> conceded that, in light of GAMO's objection to Predator's full ownership
> of the patent, a hearing or trial on standing would be required and Predator
> believed it would be more sensible to deal with it in state court than in this
> Court. . . .

*Predator*, 2014 WL 201662, at *5 (brackets and internal quotation marks omitted).

There has been no contention that Predator's claim of ownership was frivolous.

According to Predator's pleadings, not only had Phillips sold to May "all of [his] capital

stock and rights and interests in Predator International, Inc.," Aplt. App. at 78, but

Phillips had never requested or received royalties, objected to Predator's holding itself

out as the sole owner of the patent, or attempted to make use of the patent.  Predator

further alleged that the patent had always been treated as an asset on its books, that May

believed (and Predator's investors and subsequent owners relied on that belief) that

Phillips had no remaining patent-ownership interest, and that in 2003 Phillips had

confirmed to May that he had no interest in the patent.

Meanwhile, in April 2010 Predator had filed suit against Phillips in Colorado state

court.  Its complaint sought a determination that Phillips had transferred or must transfer

his interest in the patent to May (and consequently to Predator).  It presented six legal

theories supporting that relief:  (1) breach of contract, (2) breach of the implied duty of

good faith and fair dealing, (3) contract reformation, (4) breach of implied contract,

12

(5) breach of implied exclusive license, and (6) breach of fiduciary duty, all centered on the same allegations of Phillips's refusal to acknowledge Predator as the exclusive owner of the patent.

In June, Phillips assigned his purported interest in the patent to Gamo. Predator learned about the assignment no later than September 27, and on November 2 it filed in state court an amended complaint adding new claims against Phillips that his assignment to Gamo breached his duties to Predator and that Predator still owned the patent. Soon after, Gamo moved to intervene in the state-court suit, and the suit expanded further. Alleging that he had never relinquished his rights to Predator or the patent, Phillips filed on November 15 eight counterclaims against Predator, asserting that (1) Predator had breached its fiduciary duty to him as a 50% stockholder; Predator had (2) stolen and (3) converted his rights in the company; (4) Predator had been unjustly enriched at his expense; (5) Predator owed him an accounting; and (6–8) Phillips's sale and assignment to May was void and Phillips retained a 50% ownership interest in Predator. The next day Phillips filed a third-party complaint against Tom May. He asserted claims for (1) breach of fiduciary duty, (2) civil theft, (3) conversion, (4) unjust enrichment, (5) fraudulent misrepresentation, (6) constructive fraud, and (7) an accounting; and he sought a declaratory judgment that (8) Phillips's assignment to May was void, (9) Phillips owned 50% of Predator, (10) May's sale of Predator to its current owners was void, and (11) Phillips retained a 50% interest in the patent. Also on that day Gamo submitted a proposed answer and six counterclaims against Predator (subject to Gamo's being

13

permitted to intervene).  The counterclaims sought damages for (1) fraudulent

misrepresentation and (2) fraudulent concealment, based on Predator's allegedly false

allegations in its original federal-court complaint that it had full ownership of the patent

(and therefore standing to claim infringement), which induced Gamo to expend resources

defending against those allegations.  The counterclaims further requested a declaratory

judgment that (3) Phillips's sale of his patent interest to Gamo was valid, (4–5) Gamo

now owned 50% of the patent, and (6) Predator lacked standing to pursue a patent-

infringement claim in federal court.

In December Predator moved for a separate trial on patent ownership.  On

January 1, 2011 (yes, the state court worked that day) the court granted Gamo's motion to

intervene and denied the motion for separate trials.  Later in January, Predator filed

motions to dismiss Gamo's counterclaims (except for patent ownership) on the grounds

of standing and state-federal comity and to dismiss Phillips's counterclaims on the

grounds that Phillips's sale and assignment to May was valid and that his claims were

barred by the statute of limitations or laches.  On April 1 the state court denied the

motions, save for dismissing Gamo's counterclaim that Predator lacked standing in

federal court.  It also awarded Gamo some attorney fees because Predator's motion to

dismiss two of the counterclaims failed to cite any legal authority.

Three months later, on July 11, 2011, Predator filed in federal court the motion

that is the source of the Rule 11 sanction.  It moved (1) for leave to file a supplemental

complaint asserting, among other things, a patent-ownership claim against Gamo,[3] and
(2) for leave to amend its complaint to reassert its patent-infringement claim, although
requesting a stay of the trial of the infringement claim until Predator first proved its full
ownership of the patent.

Neither request was unwarranted under the facts or the law. The rule governing
motions to supplement states that "the court may, on just terms, permit a party to serve a
supplemental pleading setting out any transaction, occurrence, or event that happened
after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Leave to
supplement a complaint with "post-complaint transactions, occurrences or events . . .
should be liberally granted unless good reason exists for denying leave, such as prejudice
to the defendants." *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir.
2001) (internal quotation marks omitted). Similarly, for motions to amend, "[t]he court
should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *see Minter v.
Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) ("in general permission is
liberally granted where there is no prejudice" (internal quotation marks omitted)); *Hardin
v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982) ("Rule 15 was
promulgated to provide the maximum opportunity for each claim to be decided on its
merits rather than on procedural niceties.").

---

[3] The motion to supplement included claims in addition to the patent-ownership claim
against Gamo. But we ignore these claims because the sanction imposed by the district
court was not based on Predator's filing them.

On its face, Predator's motion to supplement conformed to Rule 15(d). Predator had no ownership dispute with Gamo until Gamo acquired Phillips's interest in the patent. The magistrate judge noted that it was undisputed that the supplemental claim was "premised on 'transactions, occurrences, or events that happened after the date of the pleading to be supplemented.'" *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2011 WL 7627422, at *5 (D. Colo. Sept. 19, 2011) (quoting Fed. R. Civ. P. 15(d) (brackets omitted)). Predator could have brought the patent-ownership claim in a separate action and then moved to consolidate the actions. Supplementation under Rule 15(d) is simply a more efficient vehicle to accomplish that objective. *See Arp v. United States*, 244 F.2d 571, 574 (10th Cir. 1957) ("Had the court refused permission to file [the supplemental complaint], the Government could have proceeded by an original complaint in an independent action, and the identical issues would have been presented and determined. We find no abuse of discretion by the trial court [in allowing supplementation under Rule 15(d) instead]."); *see also* 6A Charles A. Wright et al., Federal Practice and Procedure § 1506 (3d ed. 2010) ("[T]he usual effect of denying leave to file a supplemental pleading because it states a new cause of action is to force [the] plaintiff to institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit, a wasteful and inefficient result." (footnote and internal quotation marks omitted)). (In response to Gamo's motion for sanctions, Predator argued: "By proposing [the patent-ownership claim] under Fed.R.Civ.P. . . . 15(d) . . . , Predator was seeking permission, in the discretion of the

16

Court, to have these claims heard in this case and not in a separate proceeding in furtherance of the policy of conservation of judicial resources." Aplt. App. at 167.)

Likewise, Predator's request to amend the complaint by reinstating the patent-infringement claim was proper on its face. It was accompanied by a request to stay proceedings on the claim until resolution of Predator's claim that it had sole ownership of the patent. Thus, the burden on the federal court was essentially the same as that anticipated when Predator was permitted to delete the infringement claim from its complaint on the understanding that it intended to refile and pursue the claim once ownership of the patent was resolved. And there was no problem in reasserting the claim without conclusive evidence of standing. As previously noted, Predator did not concede a lack of standing. It alleged the factual basis for standing and conceded only that standing would have to be proved. That is sufficient for the pleading stage. *See Lujan*, 504 U.S. at 561.

Nevertheless, the motions to supplement and amend could be denied if there was good reason for denial. And if the grounds for denial were so strong and obvious that the motions were unwarranted, then the Rule 11 sanction was proper. In our view, however, the district court stated inadequate reasons for deciding that the motions were unwarranted.

The district court gave three reasons for the sanction. First, the court held that Predator's motion was sanctionable "forum shopping." *Predator*, 2014 WL 201662, at *6; *see id.* at *5–6. Second, the court held that there was no justification for delaying the

motion until July 2011, long after the deadline for amending pleadings and at least ten months after Predator learned of Phillips's assignment to Gamo of his interest in the patent.  *See id.* at *5.  Third, the court noted that Predator had no better ground for asserting standing than it had when it dismissed the patent-infringement claim.  Although acknowledging Predator's argument that "it never conceded its lack of standing, only its lack of evidence of standing," the court viewed this as "a distinction without a difference."  *Id.*  And seizing on Predator's statement in its response to the motion for sanctions that "Predator, . . . concerned that [Phillips's] Sale and Assignment [to May of his interest in Predator] was not by itself sufficient to show standing, [had been] compelled by professional prudence [in the spring of 2010] to dismiss its patent infringement claim without prejudice," Aplt. App. at 148, the court said that "[t]o reassert an identical claim without having obtained additional evidence of standing was therefore, by Predator's own assessment, imprudent," *Predator*, 2014 WL 201662, at *5.  We discuss each of these three grounds.

### 1.    Forum Shopping

The first reason given by the district court for sanctioning Cogswell was that Predator's motion was illegitimate forum shopping.  It said:

> Forum shopping may constitute an improper purpose under Rule 11 where a party attempts to avail itself of a forum it perceives to be more favorable without any legal or factual basis for doing so, thereby causing unnecessary delay, or needlessly increasing the cost of litigation.  *See Bolivar v. Pocklington*, 975 F.2d 28, 32 (1st Cir. 1992); *Fransen v. Terps Ltd. Liability Co.*, 153 F.R.D. 655, 660 (D. Colo. 1994); *Cusano v. Klein*, 2007 WL 2825730, at *4 (C.D. Cal. Jan. 29, 2007).

*Id.* at *4 (brackets and internal quotation marks omitted).

There was no forum shopping with respect to the infringement claim, which had not been (and could not have been) brought in state court, *see* 28 U.S.C. § 1338(a) (state courts do not have jurisdiction over patent-infringement claims), contrary to the district court's erroneous statement that Predator had "voluntarily dismiss[ed] that claim and refil[ed] it in state court," *Predator*, 2014 WL 201662, at *1 (citation omitted). But even with respect to the patent-ownership claim, the court misconceived the pertinent legal doctrine on forum shopping. "Forum shopping is not an improper purpose [under Rule 11] if a ground for federal jurisdiction arguably exists." 2 James Wm. Moore et al., *supra,* at § 11.11[8][b]. There is no impropriety simply in pursuing the same claim simultaneously in state and federal courts. The general rule is that "both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other," *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964) (internal quotation marks omitted), and even then, it is ordinarily the latter court that must decide the question of res judicata, *see id.* The district court distinguished *Donovan* because the holding in that case was that the state court could not enjoin a federal lawsuit raising a claim similar to one disposed of in the state court. But the Supreme Court's dictum in *Donovan* is clear and states well-settled law. *See United States v. Lot 85, Cnty. Ridge*, 100 F.3d 740, 742 (10th Cir. 1996); *Aluminum Prods. Distribs., Inc. v. Aaacon Auto Transp., Inc.*, 549 F.2d

1381, 1383–84 (10th Cir. 1977); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." (internal quotation marks omitted)).

The three opinions cited by the district court in support of its above-quoted statement on forum shopping do not support the sanction here. In *Bolivar*, 975 F.2d at 31–32, a Rule 11 sanction was imposed on the sole shareholder of certain corporations who, after dismissal of claims against the defendant by the corporations, brought the same claim in his own name against the same defendant before another judge (of the same court). The claims clearly belonged to the corporations, not the shareholder. Here, the claims to be added by Predator's motion were legally sound. In *Fransen*, 153 F.R.D. at 659–60, the court imposed Rule 11 sanctions because the plaintiff filed a suit that was clearly meritless because of the res judicata effect of a prior state-court judgment. Here, there was no state-court judgment when Predator filed its motion. And in *Cusano*, 2007 WL 2825730, at *4, the district court simply ordered an attorney to show cause why he should not be sanctioned for filing a frivolous motion to recuse the judge. In each of the three cases the sanctioned attorney was trying to proceed before another court or another judge of the same court. The basis of the sanction, however, was not forum shopping *simpliciter* but, rather, filing a pleading that was patently unfounded. There has been no such challenge to the legal or factual basis of Plaintiff's additional claims, nor to the district court's jurisdiction to hear them.

This is not to say that a federal court must always permit amendment of a complaint to add a claim already pending in state court.  The Supreme Court has recognized several abstention doctrines, under which a federal court should not hear a case when the same claims are before a state court.  But the district court did not mention any of these doctrines, and we would be loath to affirm a Rule 11 sanction because of a legal doctrine that was not invoked by the court that imposed the sanction.  We suspect that a district court would not think it appropriate to say in that circumstance that any "reasonable attorney admitted to practice before the district court," *Adamson*, 855 F.2d at 673, would have known of the doctrine precluding the pleading filed by the attorney.

Moreover, we cannot say that any abstention doctrine made Cogswell's action unreasonable.  Some certainly would not justify abstention here.  And to the extent that others could justify abstention, they are discretionary, and their application by the district court was not so predictable in this case that to pursue the motion to supplement and amend was legally unwarranted.

The three more traditional abstention doctrines—which apply to cases (1) "presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," *Colorado River*, 424 U.S. at 814 (internal quotation marks omitted); (2)  "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," *id.*; or (3) where "federal jurisdiction has been invoked for the purpose of restraining state criminal

proceedings, . . . state nuisance proceedings[,] . . . or collection of state taxes," *id.* at 816, 817—are irrelevant here.

More relevant is the *Colorado River* doctrine, although it is "considerably more limited," *id.* at 818, than the previously mentioned "extraordinary and narrow" traditional abstention doctrines, *id.* at 813.  Under the *Colorado River* doctrine, "reasons of wise judicial administration" may require dismissal in favor of concurrent state proceedings. *Id.* at 818.  As the Supreme Court later explained, *Colorado River* recognized four factors to consider when deciding whether to abstain from exercising jurisdiction:  (1) in an *in rem* action, whether the federal court was the first to assume jurisdiction over the property; (2) "the inconvenience of the federal forum"; (3) "the desirability of avoiding piecemeal litigation"; and (4) "the order in which jurisdiction was obtained by the concurrent forums."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983).  These four factors do not support abstention here:  this is not an *in rem* action, the federal forum was not inconvenient, exclusive federal jurisdiction over patent-infringement claims would necessarily result in some degree of piecemeal litigation, and the federal forum had jurisdiction first.  *Moses H. Cone,* however, identified other factors that may be more applicable, "such as the vexatious or reactive nature of either the federal or the state action . . . ; whether federal law provides the rule of decision . . . ; and the adequacy of the state court action to protect the federal plaintiff's rights . . . ."  *Fox v. Maulding*, 16 F.3d 1079, 1082 (10th Cir. 1994) (citing *Moses H. Cone*, 460 U.S. at 18 n.20, 23, 28).  And "[o]ther courts also have considered whether the party opposing

abstention has engaged in impermissible forum-shopping." *Id.* Even so, "[n]o single factor is dispositive" and "[o]nly the clearest of justifications will warrant dismissal." *Id.* (internal quotation marks omitted); *see FDIC v. Nichols*, 885 F.2d 633, 637 (9th Cir. 1989) ("We are aware of no doctrine of abstention or deference of jurisdiction which authorizes federal courts to decline to exercise jurisdiction on [forum-shopping] ground[s] alone.").

Also relevant is the discretion of the district court to refuse to exercise jurisdiction over a declaratory-judgment claim. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration'"). District courts should consider five factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue;
> [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to *res judicata;*
> [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980–81 (10th Cir. 2012) (internal quotation marks omitted). Ultimately, however, the issue for the court to decide is simply "whether the controversy can better be settled in a pending action." *ARW Exploration Corp. v. Aguirre*, 947 F.2d 450, 454 (10th Cir. 1991). This is a "practical" decision, *St. Paul Fire & Marine Ins. Co. v. Runyan*, 53 F.3d 1167, 1170

(10th Cir. 1995), which may turn on any number of nuances, making anticipation of a district court's decision difficult, if not impossible, to predict.

Under these authorities, Predator's effort to pursue its patent-ownership claim in federal court was, if not guaranteed to be successful, at least objectively reasonable. It would not have been clear to a reasonable attorney that denial of the motion to amend was demanded by settled law. Consider the full context. When Predator originally sued Phillips in state court, it was suing a defendant who was not a party in the federal proceedings and the subject matter of the suit—patent ownership—was distinct from the issues raised in the federal litigation, with no significant overlapping law or facts. But after Gamo bought Phillips's interest in the patent, various counterclaims were filed in state court that significantly expanded the issues. Predator moved to dismiss the new counterclaims and sought to have the patent-ownership claim tried separately. The state court rejected Predator's requests (except for dismissing one counterclaim), thereby reducing the efficiency in having the state court, rather than the federal court, decide the ownership claim. Three months later, Predator moved to amend its federal complaint to add an ownership claim to its other claims against Gamo. At that time the state court had issued no rulings on the ownership claim—neither party had sought any—and little discovery had been conducted. Moreover, bringing the ownership claim in federal court had several advantages: it avoided delays in the federal infringement claim that could result from appeals in state court of any decision regarding patent ownership; it consolidated claims against a party already before the federal court; and it avoided

24

piecemeal litigation (even if Predator proved its patent ownership in state court, it would still need to file an infringement action in federal court because of exclusive federal jurisdiction over patent claims under 28 U.S.C. § 1338).  Predator adverted to these considerations when it gave the district court the following reasons for filing its motion to supplement and amend its complaint:

> to accelerate final judgment on the standing issue, to mitigate GAMO's splitting of claims between this Court and state court, to provide a hedge against the error-ridden proceeding in state court which had the appearance of an interminable controversy replete with appeals, remands and retrials, and to permit this Court to determine standing which would have been the case if GAMO, pursuant to its duty of candor and Fed.R.Civ.P. 26, had disclosed to this Court and Predator in June 2010 that it had acquired Phillips' interests, if any, in the patent.

*Predator*, 2014 WL 201662, at *5 (internal quotation marks omitted).  If in those circumstances it was "unwarranted" for Predator to seek to pursue its ownership claim in federal court, then it is hard to see how it could ever be proper to pursue in federal court a state-law claim already pending in state court.

It is no answer to say that Predator was unhappy with rulings by the state court,[4] because we would presume that parties seeking federal-court review anticipate there being an advantage to doing so.  In any event, the state court had not issued any rulings

---

[4] After listing Predator's state-court defeats, *see Predator*, 2014 WL 201662, at *2, the district court referred to those "adverse rulings" as motivating Predator's filing of the motion to amend and supplement, *id.* at *5, *6, without differentiating between those rulings that occurred before the filing of the motion (the denial of the motions for separate trials and to dismiss Phillips's and Gamo's counterclaims) and those that occurred after it was filed (the denial of a motion to recuse the judge and the granting of a motion to disqualify Cogswell).

related to the merits of the claim Predator sought to pursue in federal court.  The only substantive rulings in state court before Predator filed its motion to supplement and amend its complaint were the rulings that defeated the efficiencies of pursuing the ownership claim in state court:  the ones that made clear that the state-court action was going to be significantly expanded and the patent-ownership claim would be tried with all the other claims.  (The sole other ruling was an award of $2,481.50 in attorney fees for Predator's unsupported motion to dismiss two of Gamo's counterclaims.)  It was only on July 15, 2011, four days after the motion to supplement and amend was filed, that Gamo and Phillips renewed a motion to disqualify Cogswell (two earlier attempts had been unsuccessful), which was not granted until November 29, 2011.

In holding that Predator's motion to supplement and amend its complaint was not unwarranted, we find support in a federal district-court decision on a similar matter in a similar case.  In *Energy Recovery*, 133 F. Supp. 2d at 815–16, the parties disputed whether the defendant had transferred to the plaintiff his rights to a patent.  The plaintiff initially sued the defendant in state court for tortious business interference, misappropriation of trade secrets, detinue, and common-law and statutory conspiracy. *See id.* at 816.  The plaintiff then filed suit in federal court against the defendant, bringing Lanham Act claims for unfair competition and cyber piracy and a request for a declaration of patent noninfringement.  *See id.*  The defendant requested the federal court to stay the noninfringement action because the ownership issue—a matter of state law— would be resolved in the state litigation.  The district court decided not to stay the action.

First, the proceedings on the plaintiff's other federal claims (like Predator's) would continue anyway.  Second, the state court lacked jurisdiction over patent-infringement claims, so it could not address all issues presented in the declaratory-judgment claim.  And third, prompt resolution of the patent-ownership issue in state court was not guaranteed, and the lack of progress on the issue in state court meant that proceeding in federal court would not interfere excessively with the state proceedings.  All in all, the court thought that proceeding with the claim would serve judicial economy.  *See id.* at 822–23.

To recapitulate, Predator had not forum-shopped its patent-infringment claim because, contrary to the district court's understanding, it had not filed (and could not file) the claim in state court.  And as for the patent-ownership claim, the legal proposition relied on by the district court—that a party engages in improper forum shopping if it "attempts to avail itself of a forum it perceives to be more favorable *without any legal or factual basis for doing* so," *Predator*, 2014 WL 201662, at *4 (emphasis added)—does not apply because there was a legal and factual basis for pursuing the claim in federal court even though it was already before the state court.  Although there are legal doctrines under which the district court could have abstained from considering the ownership claim, the district court did not set forth the doctrines in its order; *a fortiori*, the court made no finding that a reasonable attorney would have known that the motion to amend would be precluded by one of those doctrines; and, in any event, none of those doctrines clearly precluded the proposed amendment.  As a result of its legal error, the

27

district court abused its discretion in relying on forum shopping as a ground for imposing the Rule 11 sanction.

On this ground alone, we must reverse the award of sanctions and remand for further proceedings.  When a court bases its exercise of discretion on the confluence of several factors and it was improper for the court to rely on one of those factors, we must reverse "unless we can say as a matter of law that it would have been an abuse of discretion for the trial court to rule otherwise." *Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) (internal quotation marks omitted).  That standard for affirmance is not satisfied here.  The district court's other two grounds for imposing sanctions are not compelling, and at the least do not mandate the full sanction imposed.  We briefly discuss each ground.

### 2.    Delay

To support the sanctions imposed on Cogswell, the district court relied in part on the delay between when Predator learned of Gamo's acquisition of Phillips's patent-ownership rights and when it moved to supplement and amend its complaint in federal court, *see Predator*, 2014 WL 201662, at *5, particularly in light of the pretrial order's deadline for amending pleadings, which had expired nearly two years earlier.

The deadline in the pretrial order, however, was the final date to "amend" pleadings.  *Id.* at *3.  And even if read to encompass motions to *supplement* the complaint, *but see Ohio Valley Envtl. Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 256 (S.D. W. Va. 2007) (deadline for amending pleadings did not apply to

28

supplemental pleadings), it could not preclude Predator from filing a separate suit on the ownership claim against Gamo, and then seeking consolidation of the two suits. The district court could decide that the supplemental claim should proceed as a separate case; but there was nothing unwarranted in giving the district court the choice of whether to consolidate the claims with those that were pending. *See* Wright et al., *supra*, § 1506 ("[T]he usual effect of denying leave to file a supplemental pleading because it states a new cause of action is to force [the] plaintiff to institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit, a wasteful and inefficient result." (footnote and internal quotation marks omitted)).

As for the motion to amend to add the patent-infringement claim, it was objectively reasonable for Predator to think that the amendment did nothing more than follow up on what everyone had anticipated when the infringement claim was dropped from Predator's complaint. Indeed, when Gamo had argued that Predator's dismissal of its infringement claim should be conditioned on reimbursement of the expenses it had incurred in defending the claim, the magistrate judge "agree[d] with Predator that much of the work and discovery related to Predator's patent infringement claim is . . . applicable . . . to a later-filed patent infringement action, should Predator choose to pursue it." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2010 WL 3630118, at *8 (D. Colo. Sept. 9, 2010). If anything, the amendment was premature, not late, because ownership of the patent had not yet been resolved. In

29

these circumstances, it was not objectively unreasonable for Predator to pursue the motion to supplement and amend despite the pretrial order's deadline.

Turning to the nine-month delay between when Predator learned that Gamo had acquired Phillips's interest in the patent and when Predator moved to add its claims in federal court, Predator reasonably argued that the important date was not when Gamo acquired Phillips's interest, or even when Predator learned of the acquisition, but rather when it became clear that the state-court litigation would not be a focused dispute between Predator and Phillips regarding who owned the patent. It was not clear that the state case had significantly expanded until (1) Gamo and Phillips sought to add numerous claims in the state case, (2) the state court denied Predator's motion to try the ownership issue separately, and (3) the state court, over Predator's objections, approved the expansion of the case. Moreover, since it then became clear that Predator's rival in the state case would be Gamo, which was already the opposing party in the federal case, there was less efficiency in segregating the ownership claim from those already in federal court.

The district court acknowledged Predator's arguments regarding why it now made sense to litigate ownership in federal court, but it did not address the contention that the nature of the state litigation had significantly changed in April 2011, when the state court confirmed that Gamo's claims could be litigated in that forum. Rather, it relied on "Predator's assertion that, had it known of the assignment earlier, it would have withdrawn its declaratory judgment claim from the state court and litigated it in this

30

Court[, which] is difficult to square with its decision to continue litigating in state court for at least ten months before taking any action in response to the assignment." *Predator*, 2014 WL 201662, at *5. But the court omitted an important component of Predator's assertion. What Predator said was that if Gamo had informed Predator of the sale in June, "while Predator's patent infringement claim *was still pending*" in federal court, Pl.'s Resp. to Defs.' Mot. for Sanctions at 27, *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 1:09-cv-00970-PAB-KMT (D. Colo. Jan. 12, 2012) (emphasis added), it would have dismissed the state case and kept the infringement claim alive. Once the patent claim had been dismissed, however, there would be stronger reasons to continue with the state case, at least absent further complicating developments. We are not saying that the district court abused its discretion in denying the motion to supplement and amend because of Predator's delay in bringing the motion. But in light of Predator's asserted justifications, the delay did not make it objectively unreasonable for Predator to seek to add the claims.

### 3.    Standing

Finally, the district court held that Predator had no basis to reassert its patent-infringement claim because it had no new evidence of standing. It stated that a lack of standing and a lack of evidence of standing is "a distinction without a difference," *Predator*, 2014 WL 201662, at *5; but as discussed above, Predator had no obligation to prove standing conclusively at the pleading stage, *see Lujan*, 504 U.S. at 561. And whether or not it had been "[]prudent" for Predator to dismiss the claim in 2010,

*Predator*, 2014 WL 201662, at *5, later developments in the state-court litigation—such as the threat of complicated and prolonged proceedings—could have reasonably led Predator to reassess that determination. In particular, if Predator could not refile its infringement claim until it had *proved* its ownership of the patent in state court, then the longer the delay in state court (and the prospect of delay had increased as the state litigation expanded), the greater the chance that the statute of limitations on the infringement claim could reduce any recovery Predator might obtain against Gamo, a point specifically argued to the district court by Predator. In short, Predator's standing was adequately supported by the allegations in the proposed amended complaint, and there were proper grounds for it to change its mind and now seek to litigate ownership in the federal court. Again, we do not suggest that denial of the motion to amend was an abuse of discretion, but only that the motion to amend was not unwarranted.

In light of our determination that the Rule 11 sanction must be reversed, we need not address Cogswell's other arguments for reversal, except to say that we reject the unfounded contention that the district judge was biased.

## II.    CONCLUSION

We REVERSE the district court's judgment imposing sanctions on Cogswell and REMAND for further proceedings.